**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHAWN JOHNSON, | |
| Petitioner, | Civil Action No. 15-8322 (MAS) |
| v. | **MEMORANDUM OPINION** |
| STATE OF NEW JERSEY, et al., | |
| Respondents. | |

**SHIPP, District Judge**

*Pro se* Petitioner Shawn Johnson, confined at the New Jersey State Prison in Trenton, New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a sentence imposed by the State of New Jersey for murder, attempted murder, and related crimes. For the reasons stated below, the Court denies the Petition.[1]

### I. FACTUAL BACKGROUND

Petitioner was convicted by a Monmouth County, New Jersey jury of the October 15, 2006 attempted murder of Jahmere Crooms and the October 18, 2006 first-degree murder of Tylik Pugh. *State v. Johnson*, No. A-1746-08T1, slip op. at 7-8 (N.J. Sup. Ct. App. Div. Jan. 13, 2011) (ECF No. 6-6) ("Appeal Opinion"). The details of the crimes are not necessary for the purposes of this Opinion—suffice it to say that after his arrest, Petitioner admitted to having shot at both men, although he claimed that in both instances he did so in self-defense. (*Id.* at 5.) Petitioner told investigators that in both shootings, Crooms and Pugh shot at him first, which forced him to fire

---

[1] Because the Court is denying the Petition, Petitioner's application for pro bono counsel, ECF No. 9, is denied as moot.

back. *Id.* Petitioner's video-taped confession was shown to the jury at trial. *Id.* at 5 n.3. There was also testimony that someone shot at Petitioner's home before the shootings. *Id.* However, Crooms and other witnesses testified that neither Crooms nor Pugh had discharged a weapon. (*Id.* at 3-4.)

One of the witnesses that testified at trial was Tyshan Smalls, who witnessed Pugh's shooting. According to the record, Smalls had spoken to the police numerous times before trial, testified at an evidentiary hearing, and also testified at the trial. (Tr. of post-conviction relief ("PCR") Decision 15:25-21:14, ECF No. 6-26.) Smalls gave a different version of the events each of the five times he testified, wavering back and forth on whether he actually saw the shooter. By the Court's count, Smalls claimed that he witnessed Petitioner shooting Pugh in three instances, but denied seeing the shooter in three other instances.[2] *Id.* Smalls also testified that after Pugh was shot, he took the cellphone out of Pugh's hand and used it to call Pugh's family members. *Id.* In addition, Smalls claimed on numerous occasions that Pugh did not have a gun on his person at the time of the shooting, implying that Pugh was killed in cold blood. *Id.*

At trial, during jury instructions, the trial court gave a self-defense instruction after explaining to the jury the elements of the substantive charges and their lesser-included offenses. (Appeal Op. 10.) Specifically, the trial court stated, in relevant part, that:

> Self-defense exonerates a person who commits murder or serious bodily injury or significant bodily injury in the honest and reasonable belief that such action was necessary to prevent his own death or serious bodily injury, even though this belief was later proven mistaken. . . . The State has the burden to prove to you beyond a reasonable doubt that the defense of self-defense is untrue.
>
> If the State carries its burden [in proving that defendant could have retreated with complete safety], then you must disallow the defense.

---

[2] Smalls testified at trial that he did not see who the shooter was *and* that he witnessed Petitioner shoot Pugh. (Tr. of PCR Decision 20:7-21:12.)

> If the State does not satisfy this burden, then you do have reasonable doubt, then it must be resolved in favor of defendant and you allow the claim of self-defense and acquit the defendant.

(*Id.* at 11.) The jury found Petitioner guilty on all counts. (*Id.* at 7.)

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ for habeas corpus shall not issue unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

A state-court decision involves an "unreasonable application" of clearly established federal law if the state court: (1) "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case"; or (2) "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state-court decision is based on an unreasonable determination of the facts only if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S.

3

322, 340 (2003) (citation omitted). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state-court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III. DISCUSSION

### A. Ground One

Petitioner asserts that he has "newly discovered" evidence, in the form of a new affidavit from Tyshan Smalls, the individual who recounted various different versions of the events during the criminal proceedings. (Pet. 7, ECF No. 1.) Petitioner asserts that this "new" affidavit shows that Smalls, in addition to taking Pugh's cellphone, also took a black handgun from the crime scene that presumably belonged to Pugh, which would prove Petitioner's assertion that Pugh had shot at him and that Petitioner acted in self-defense. (*Id.*) However, Petitioner does not attach said affidavit to the instant Petition. Instead, it would appear Petitioner is simply reiterating a claim that he made during his PCR proceeding. (*See* Tr. of PCR Decision 9:8-24.) The PCR court rejected this new evidence as not credible. (*Id.* at 28:1-17.)

Respondents argue that Petitioner has not raised a cognizable federal habeas claim. The Court agrees. To the extent Petitioner is alleging that this "new" affidavit constitutes newly discovered evidence for purposes of his federal habeas petition, the argument is meritless. In federal habeas proceedings, this Court is forbidden from considering new evidence that was not

4

presented to the state court unless it is "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). This affidavit, of course, *was* previously discovered, during the state PCR proceedings, so it cannot be "newly discovered" evidence for the purposes of the instant Petition.

To the extent Petitioner argues that the state court erred in rejecting his "new" evidence, Respondents are correct that Petitioner has failed to state a cognizable federal habeas claim. On a federal habeas petition, this Court can entertain claims challenging a state court judgment "only on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, Petitioner has not identified what constitutional right or federal law the state court violated in rejecting his new evidence—there was no constitutional right that required the state court to find Petitioner's new evidence credible. On habeas review, federal courts only ask whether appropriate procedural safeguards were provided to Petitioner and do not second-guess whether the state court's evidentiary findings were substantially correct. *See* 28 U.S.C. § 2254(e); *Sumner v. Mata*, 449 U.S. 539, 546 (1981) ("[Deference to the state court] applies to cases in which a state court of competent jurisdiction has made 'a determination after a hearing on the merits of a factual issue.'"). Petitioner was given an opportunity to present his new evidence to the state court, and he was given a statement of reasons why the state court rejected the new evidence. Accordingly, the state court provided Petitioner with the appropriate procedural safeguards required by the Constitution. Petitioner does not argue otherwise. *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Given that Petitioner does not allege a violation of his federal rights, the Court denies relief on this ground.

### B.   Grounds Two, Three, and Five through Eight

In these grounds, Petitioner alleges a slew of claims that he was denied a fair trial due to various errors committed by the trial court, namely that: (a) the trial court erred in finding evidence of Petitioner's house being shot at twice *after* the shootings occurred inadmissible; (b) the trial court did not provide a limiting instruction regarding Petitioner's status as a member of a violent gang; (c) the trial court's self-defense jury instruction was incorrect because it was only given after the court instructed the jury on all of the substantive offenses without giving a self-defense instruction after each offense; (d) the trial court did not provide a limiting instruction regarding a codefendant pleading guilty to harboring a fugitive; (e) the trial court erred when it failed to ask the jurors questions after they were reportedly photographed during trial by someone in the audience; and (f) the trial court erred in not providing a passion/provocation instruction. Because none of these issues raises concerns regarding a specific constitutional or federal right, the Court construes them as raising generic claims under the Due Process Clause.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The core concept of due process is protection against arbitrary government action. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." *Riggins v. Nevada*, 504 U.S. 127, 149 (1992). In the field of criminal law, "the category of infractions that violate 'fundamental fairness' [is defined] very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992).

> The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional

6

> guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

*Id.* As the Supreme Court explained,

> [i]t goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.

*Id.* at 445 (citations omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)). In order to satisfy due process, Petitioner's trial must have been fair, but it need not have been perfect. *United States v. Hasting*, 461 U.S. 499, 508-09 (1983) ("[T]here can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial."). "Except in cases involving a violation of a specific constitutional provision such as the Confrontation Clause, this Court may not reverse a state 'trial judge's action in the admission of evidence' unless the evidentiary ruling 'so infuse[s] the trial with unfairness as to deny due process of law.'" *Riggins*, 504 U.S. at 147 (alteration in original) (citation omitted) (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).

Here, except for claim (d) as described above, which was not presented to the state court, the state court painstakingly addressed each of these claims, finding that: (1) the trial court did not err in finding that evidence of Petitioner's house being shot at twice after the shooting was inadmissible, because the evidence was not relevant to either the substantive offenses or Petitioner's defenses (Appeal Op. 20); (2) the trial court did not err in failing to provide a limiting

7

instruction with regard to Petitioner's gang affiliation, because such instruction would not have influenced the verdict (*id.* at 22); (3) the trial court did not err in giving only one self-defense instruction after instructing the jury on all of the substantive offenses, because under state law, the trial court was not required to do so (*id.* at 12); (4) the trial court did not err in failing to ask questions after the jury was reportedly photographed, because there was no evidence that the photography actually took place, nor any evidence that it had the capacity to influence the jury, and Petitioner did not object to the lack of questioning at the time (*id.* at 18); and (5) the trial court did not err in failing to provide a passion/provocation instruction, because that defense is incompatible with Petitioner's assertion of self-defense (*id.* at 25).

The Court finds the state court's holdings reasonable. To begin, it was reasonable for the state court to find that evidence of events that occurred *after* the shootings was not relevant to the criminal matter. In fact, had such evidence been admitted, it would have simply shown that Petitioner was fearful of *future* harm. Killing someone because of the belief that such person was likely to attempt to harm oneself in the *future* is, essentially, evidence of murder—there is no such thing as "proactive self-defense."

With regard to the alleged errors made in the jury instructions, such errors are harmless unless they "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Here, it was reasonable for the state court to find that the alleged errors in the jury instructions would not have influenced the outcome. Petitioner had already admitted to shooting both men, and was relying solely on the assertion of self-defense throughout the proceedings, including in his video-taped confession that was shown to the jury—the jury hardly needed additional instructions to know that Petitioner was asserting the defense as to both shootings. As for the lack of limiting instructions regarding Petitioner's

gang affiliation and his codefendant's guilty plea, whatever minor prejudice that may have been present in the jury's knowledge of both facts likely had no effect on the verdict,[3] because the question of Petitioner's involvement in the shootings was not in doubt; again, Petitioner had already confessed to the shootings, so this is not a case where the jury impermissibly inferred that Petitioner could have committed the bad acts.

With regard to the incident where the jury was reportedly photographed by someone in the audience at trial, the state court found that there was no evidence that the jury was, in fact, photographed, so any possibility of jury intimidation was speculative at best. Petitioner presented no evidence, either here or in state court, showing that the jury was indeed intimidated by any photography. On a federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not satisfied his burden of showing that the state court was incorrect in its factual findings, so it was reasonable for the state court to find that there was no evidence of jury intimidation. Finally, it was reasonable for the state court to find that a passion/provocation instruction was not necessary because it was incompatible with Petitioner's assertion of self-defense—a passion/provocation defense is an argument that a defendant acted irrationally, whereas an assertion of self-defense relies on the argument that a defendant acted rationally. A defendant cannot argue that he acted both irrationally and rationally at the same time.

---

[3] Although the issue of limiting instructions regarding the codefendant's guilty plea was not presented to the state court, a habeas claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

9

Even if the Court analyzes these alleged errors in the aggregate, there is no indication that they offended some principle of justice so rooted in the traditions and conscience of our people to be ranked as fundamental. The record suggests that the jury simply did not believe Petitioner's assertion of self-defense. As such, the Court finds that the state court's holdings on these grounds were reasonable applications of clearly established federal law, based on reasonable determinations of the facts. Accordingly, the Court denies Petitioner's request for relief on these grounds.

## C. Ground Four

Petitioner argues that his trial counsel was ineffective because he: (1) did not object to the fact that written self-defense instructions were not given to the jury during deliberations; (2) did not argue a passion/provocation defense; and (3) did not seek a limiting instruction about the codefendant's guilty plea. (Pet. 12.) Petitioner admits that this claim was never brought before the state court. (*Id.*) However, even if the Court considers the claim on the merits, the claim fails.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel," and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) (first quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); then quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980)). A claim that counsel's assistance was "so defective as to require reversal of a conviction . . . has two components," both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have

10

been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[4] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 1089 (quoting *Strickland*, 466 U.S. at 695).

Here, the Court finds that counsel was not ineffective. Each of the three alleged errors were already addressed above in the Court's analysis of the trial court's conduct with regard to these same issues. In essence, counsel was not ineffective for not objecting to the unavailability of written self-defense instructions—as the Court found above, the jury was well aware of Petitioner's assertion of self-defense. Counsel was also not ineffective for not raising the passion/provocation defense—as the Court found above, that defense was inconsistent with the assertion of self-defense, so counsel simply made a strategic choice to assert what he considered was the stronger defense, one that was not inconsistent with Petitioner's statements to the investigators. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"). Finally, counsel was not ineffective for failing to seek a limiting instruction regarding the

---

[4] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

11

codefendant's guilty plea—as the Court found above, by the virtue of Petitioner's confession, there was very little chance of prejudice. Accordingly, irrespective of Petitioner's failure to exhaust, the Court finds that he has failed to state a claim upon with relief may be granted, and relief on this ground is denied.

### D. Ground Nine

In this ground, Petitioner asserts that statements made by the prosecutor during closing arguments were inflammatory and therefore violated his constitutional rights. The three statements in question allegedly were: (1) "I ask you does this sound like self-defense to you? When you are leaning over somebody and you are just finishing them off with shots to the head? Or is this a message for someone who I believe on hearsay evidence has shot my house up, no one, no one shoots my house up"; (2) "It's another thing that's real interesting if he is in such self-defense posture, if he is so scared about his house being shot at and they're after me next, I got to have self-defense, why is he out there selling drugs right in Summerfield?"; and (3) "the next question that has to be answered is so what? So what? They're out there shooting at each other. There's gangs involved. There's MOB involved. There's Bloods involved. There's houses being shot up. So what? Let them all kill each other out there, because they're all a bunch of gangsters and hoodlums and whatever. I'm sure there's plenty of people out there in the world who would have that attitude and so what." (Pet. 20.) Although Petitioner argues that this was raised on PCR "as [a] supplemental point," (*id.*), the PCR court did not address this claim.

The Court construes this claim as a claim of prosecutorial misconduct. In order for a prosecutorial misconduct claim to warrant federal habeas relief, the prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (citing *Donnelly v. DeChristoforo*,

12

416 U.S. 637 (1974)). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Id.* at 181. When a prosecutor's comments raise appropriate considerations relevant to the criminal case, there is no prosecutorial misconduct. *Parker*, 132 S. Ct. at 2155.

Here, the prosecutor's statements were relevant to the criminal case. His first statement directed the jury to an alternative motive for the shootings other than self-defense. His second statement raised doubts about Petitioner's assertion of self-defense, and the statement about selling drugs was a direct reference to the testimony of a witness that he purchased drugs from Petitioner immediately before the shooting occurred (*see* Appeal Op. 4). As to the prosecutor's third statement, it goes to the heart of the likely reason why Petitioner thinks these statements are inflammatory, and why he thinks he had a valid self-defense claim—in Petitioner's mind, by the virtue of Crooms and Pugh being in a rival gang, and the fact that someone from the same gang had shot at his house, he was in constant danger of being killed by members of that rival gang, including Crooms and Pugh, so he had to take proactive action. But as the Court stated above, there is no such thing as "proactive self-defense." And that was the purpose of the prosecutor's third statement: to explain to the jury that regardless of whether Petitioner genuinely believed he was in danger, the law does not allow him to take matters into his own hands, and he did not have to the right to shoot anyone. Therefore, the Court finds that Petitioner has failed to state a claim upon which relief may be granted, and relief on this ground is denied.

E.  **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.   CONCLUSION

For the reasons set forth above, the Petition is DENIED, and the Court DENIES a certificate of appealability. Petitioner's application for pro bono counsel is DENIED as moot.

/s/ Michael A. Shipp
**Michael A. Shipp**
**United States District Judge**

Date: 1/17/17